**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

WAYNE H. NORMAN

PLAINTIFF,

                          CIVIL ACTION: <u>3:12-CV-836-N</u>

                          JURY DEMAND

CERTEGY CHECK SERVICES, INC.,

DEFENDANT.

**AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**NATURE OF ACTION**

1. This is an action for damages brought by an individual Plaintiff for Defendants violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. section 1692 et seq. (hereinafter "FDCPA"), the Texas Debt Collection Practices Act, Chapter 392 (hereinafter "TDCPA"), and the Texas Business and Commerce Code, Subchapter E, Chapter 17, (hereinafter "DTPA"), which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

2. Plaintiff seeks to recover monetary damages for Defendants violation of the FDCPA, the TDCPA, and the DTPA, and to have an Order or injunction issued by this Court preventing Defendant from continuing its violate behaviors.

3. Service may be made upon Defendant in any other district in which it may be found pursuant to 29 U.S.C. section 1132(e)(2).

## JURISDICTION & VENUE

4. Jurisdiction of this Court arises under 15 U.S.C. section 1692k(d), 28 U.S.C. section 1331, and 28 U.S.C. section 1337.

5. Venue is proper before this Court pursuant to 28 U.S.C. section 1391(b), where the acts and transactions giving rise to Plaintiffs action occurred in this district where Plaintiff resides.

## PARTIES

6. Plaintiff, Wayne H. Norman ("Plaintiff"), is a natural person residing in Dallas County, Texas.

7. Plaintiff is a consumer as defined by the FDCPA, 15 U.S.C. section 1692a(3) and the Texas Business and Commerce Code section 17.50(a)(1), and the Texas Finance Code section 392.001(1).

8. Defendant, Certegy Check Services, Inc. ("Defendant"), is an entity located at 11061 Roosevelt Blvd, St. Petersburg, Florida 33716, who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. section 1692a(5) and by Tex. Fin. Code Ann. Section 392.001(2).

9. Defendant is a "debt Collector" as defined by 15 U.S.C. section 1692a(6) and by the Tex Fin. Code Ann. Section 392.001(6).

## BRIEF HISTORY OF THE PROTECTIVE PROVISIONS OF THE ("FDCPA"), ("TDCPA"), & THE ("DTPA")

The FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692-1692p was passed in 1977 as an amendment to the CONSUMER CREDIT PROTECTION ACT OF 1968, PUB.L. 90-321, 82 STAT. 146, 15 U.S.C. § 1601 et seq. The FDCPA is located in Title V of the CONSUMER CREDIT PROTECTION ACT, which also includes other federal statutes relating to consumer credit, such as the TRUTH IN LENDING ACT (SUBCHAPTER I), the FAIR CREDIT REPORTING ACT SUBCHAPTER III), and the EQUAL CREDIT OPPORTUNITY ACT (SUBCHAPTER IV). The

FDCPA is designed and intended "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors. The stated purposes of the FDCPA are: (1) to eliminate abusive debt collection tactics against consumers by debt collectors, (2) to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and (3) to promote consistent State action to protect consumers against debt collection abuses. As averred in the Complaint, Defendant has violated these Acts. Further, as shown below, the Defendant has violated provisions of the parallel Texas Acts.

Defendant's misdeeds also violate Texas protections made for consumers. The TEXAS DEBT COLLECTION ACT, TEX. FIN. CODE § 392.001 et seq., was passed by the Texas legislature in 1997 and became effective on September 1, 1997. As a general statement, the TEXAS DEBT COLLECTION ACT ("TDCA") is broader in scope than the FDCPA in that the TDCA applies not only to professional debt collectors, but also to any "person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system,  device, or scheme intended to be used to collect consumer debts." TEX. FIN. CODE § 392.001(6). Accordingly, unlike the

FDCPA, the TDCA applies to creditors attempting to collect their own debts. TEX. FIN. CODE § 392.001(3). Additionally, the TDCA contains a "tie in" clause, which provides that a violation of the TDCA also constitutes a violation of the TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT ("DTPA"), Tex. Bus. & Com. Code § 17.41, et seq.

## FACTUAL ALLEGATIONS

10. Plaintiffs' alleged obligation arises from a transaction in which the Plaintiff allegedly owed Horseshoe Casino. (the original creditor)

11. On May 20, 2011, @ approximately 8:58am, Plaintiff received a telephone call from (1-800-247-8714) a representative identifying herself as a collection agent for Complete Payment Recovery Services, Inc., f/k/a Certegy Payment Recovery Services, Inc. (the initial communication)

12. Plaintiff advised the collection agent that he had no knowledge of the alleged debt, and to send him verification thereof.

13. Plaintiff received a reply letter from Defendant dated July 19, 2011, (almost 30 days later) from Kelly Self, Information Specialist for Certegy Check Services, Inc., stating in pertinent part, "The entire

transaction is electronic; consequently, there is no paper check issued for this type of transaction." (Exhibit "A")

14. The ("FDCPA") section 1692g(a) provides that, within five (5) days after the initial communication with a consumer in connection the collection of any debt, the "debt collector" must send the following notice to the consumer, unless information is contained in the initial communication or the consumer has paid the debt:

　　a) the amount of the debt;

　　b) the name of the creditor whom the debt is owed;

　　c) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

　　d) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    e) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15. The Defendant violated the ("FDCPA") section 1692g(a) by not providing the required notices within five days after the initial communication with Plaintiff. The initial communication between the Plaintiff and Defendant took place on May 20, 2011 at 8:58 am; however, Plaintiff did not receive a written notice from the Defendant until almost 30 days later. (Letter dated July 19, 2011)

16. The Defendant violated the ("FDCPA") section 1692g(a)(3), by not providing Plaintiff with the required written disclosure statement on the notice letter dated July 19, 2011.

17. The Defendant violated the ("FDCPA") section 1692g(a)(4), by not providing Plaintiff with the required written statement on the notice letter dated July 19, 2011.

18. The Defendant violated the ("FDCPA") section 1692g(a)(5), by not providing Plaintiff with the required written statement on the notice letter dated July 19, 2011.

19. The Defendant violated the ("FDCPA") section 1692g(e)(11), by not providing Plaintiff with the required "Mini-Miranda" verbiage on the notice letter dated July 19, 2011.  This section provides that "The failure to disclose in the initial communication…the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose".

20. The Defendant's actions constitute conduct highly offensive and deceptive to the "least sophisticated consumer".  Therefore, Defendant is liable to Plaintiff for actual and statutory damages.

## COUNT I – FDCPA

21. Plaintiff repeats and re-alleges each and every allegation contained above.

22. Defendant's aforementioned conduct violated the ("FDCPA") sections 1692g(a), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692e(11).

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

   a) Adjudging that the Defendant violated the ("FDCPA");

   b) Awarding Plaintiff statutory damages pursuant to 15 U.S.C. section 1692k, in the amount of $1,000 per statutory violation;

   c) Awarding plaintiff actual damages pursuant to 15 U.S.C. section 1692k;

   d) Awarding such other and further relief as the Court may deem just and proper.

## COUNT II – TDCPA

23. Plaintiff repeats and re-alleges each and every allegation above.

24. The Defendant violated the Texas Debt Collection Practices Act in one or more of the following ways:

   a) Using false representation or deceptive means to collect a debt or obtain information concerning a consumer, including (Tex. Fin. Code section 392.304(a)(19)).

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

   a) Adjudging the Defendant violated the ("TDCPA");

   b) Awarding Plaintiff statutory damages pursuant to the ("TDCPA");

   c) Awarding Plaintiff actual damages pursuant to the ("TDCPA");

   d) Awarding such other and further relief as the Court may deem just and proper.

## **COUNT III - DTPA**

25. Plaintiff repeats and re-alleges each and every allegation by reference herein all prior paragraphs above.

26. A violation of the Texas Debt Collection Practices Act is a deceptive trade practice under the Texas Deceptive Trade Practices Act, and is actionable under the Texas Deceptive Trade Practices Act, Tex. Fin. Code Ann. Section 392.404(a).

27. The Defendant violated the Tex. Bus. & Comm. Code section 17.50(h).

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a) Adjudging that the Defendant violated the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code, Chapter 17, Subchapter E.

b) Awarding Plaintiff three times actual damages pursuant to Tex. Bus & Comm. Code section 17.50(h).

c) Awarding such other and further relief as the Court may deem just and proper.

Respectfully submitted,
By:/s/Wayne H. Norman
Wayne H. Norman
1001 Brook Hollow Drive
Euless, Tx. 76039
(682) 241-8688

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

WAYNE H. NORMAN

PLAINTIFF,

            CIVIL ACTION: <u>3:12-CV-836-N</u>

            JURY DEMAND

CERTEGY CHECK SERVICES, INC.,

DEFENDANT.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of April 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and provided a copy to the Defendant via CM/ECF and by USPS mail as follows:

Kandy E. Messenger,
**SPROTT RIGBY NEWSOM ROBBINS, & LUNCEFORD, PC
ATTORNEY FOR DEFENDANT**
2211 Norfolk, Suite 1150
Houston, Texas 77098

Certegy Check Services, Inc.<br>
11601 Roosevelt Boulevard<br>
St. Petersburg, Florida 33716<br>
1-800-215-6280

July 19, 2011

Wayne Norman
2803 Riverside Parkway Apt 806
Grand Prairie, TX 75050

Re: Claim No. 25850337 & 25850358

Dear Mr. Norman:

This is written in response to your request for validation of an Automatic Clearing House ("ACH") debits presented by Horseshoe Bossier City. Initially, we would like to assure you that we do understand the concern this matter may have caused.

In order to respond to your inquiry, please allow us to offer some operational information about Certegy Check Services ("CCS"). CCS is a check authorization and warranty service. Merchants throughout the United States and other countries utilize our service to help reduce losses incurred through the retail practice of check acceptance. For many CCS clients, we assume payment responsibility should an authorized check subsequently be returned by the check writer's bank for *any* reason. When a check is returned unpaid, it is forwarded to CCS. We, in turn, purchase the check and initiate collection actions through our subsidiary, Certegy Payment Recovery Services, Inc. ("CPRS").

With regard to your specific inquiry, an Automatic Clearing House (ACH) debit in the amount of $300.00 and $500.00 was presented by Horseshoe Bossier City on 03/10/2011 to your financial institution. Horseshoe Bossier City forwarded these ACH debits to CCS when they returned as "insufficient funds" items from your financial institution. As explained in the preceding paragraph, the ACH's were purchased and entered our files as claim number 25850337 and 25850358. As you may or may not know, when an ACH payment is processed, the account holder has verbally authorized a debit to be taken from his or her checking account by the merchant. The merchant then provides the American Banking Association (routing) number, which identifies the financial institution that holds the account, as well as the account number that is to be debited for the amount of the purchase to the financial institution. The entire transaction is electronic; consequently, there is no paper check issued for this type of transaction. For that reason, we are unable to furnish copies of the checks to you as validation.

If you should have further questions, please do not hesitate to contact our Customer Care Department at 1-800-437-5120.

Sincerely,

*Kelly S*

Kelly Self
Information Specialist
Customer Care Department
Certegy Check Services, Inc.

EXHIBIT A

CERTEGY